We have the next case, and that would be in the interest of Tyler N. W. O. Minor. We have Julie Quinn for the appellant and Mr. Tim Ting for the athlete. Thank you. Good afternoon. May it please the Court and the Counsel. This case seems to deal with liberty and justice, as I'm sure they all have to do with liberty and justice. But the issue is here, how sufficient does the evidence have to be in order to take a 13-year-old girl who goes to babysit with her brother and her brother's girlfriend, babysits some little kids a couple days through the summer, how sufficient does the evidence have to be to take her from being an ordinary 13-year-old to someone who is adjudicated guilty of aggravated criminal sexual assault? I would posit that under our system of liberty, it has to be pretty good. Our Supreme Court has said in Peeble v. Pollock that a criminal conviction can be set aside if proof is so unsatisfactory as to raise reasonable doubt of the defendant's guilt. In this case, the child victim provides the only evidence that really stands out here. There's no circumstantial evidence. There's no other eyewitness testimony. There's no physical evidence. It all hinges on the testimony of a girl who is 5 at the time this allegedly happened, is at best 7 at the time of hearing. It all hinges on that. That is to be expected in some cases. Our courts have said that it can hinge on one witness. But if it's all hinging on one witness, that witness better know what she's talking about. In this case, there are a lot of inconsistencies in what the child has testified to. The state will tell you it's not important. It's a matter of degree. But because the testimony is so pivotal, we need to really look at this. From our record, the first time that we actually know the child has made a complaint is to an interviewer, a child-sensitive interviewer. According to the interviewer, the child complained of three acts, kissing her on the lips, touching her private part, and licking her private part. One of those, obviously, is not criminal. The other two are. Some months later, the DCFS investigator also interviews the child. At that time, the child only says that she was kissed on the lips. Obviously not a criminal act, obviously something that many well-intentioned people do. By the time it gets to hearing sometime later, the state questions the child as much as the state wants to. And two acts are mentioned, one kissing on the lips, other touching of the private part. First, not a criminal act. The second, legally insufficient. And then when we get to cross-examination, the only thing the child complains of is being kissed on the lips. In this case, we have a child who is comfortable talking in court. You can read the record and see that she talks about the time that her brother got in trouble. She talks about her pretend sister. She talks about her school, things like that. It's not a child who's giving monosyllabic answers and cannot bring themselves to speak within the courtroom. What we have here, I believe, is a child who is probably leadable. They're the typical young child. They have a lot of respect for authority. And the child can be led based on who's doing the questioning, who's asking the questions. This is especially clear when we look at the cross-examination. The child's already testified that two things happened on direct examination. When we get to the cross-examination, it's a very gentle cross-examination, by the way, the attorney asks, well, she just kissed you on the lips and that was all, right? Probably not even so leaving as that. And the child agrees, you just got kissed on the lips, which shows that depending on who's asking, the child is changing her story. And this is problematic in this case because this is the only thing that we have against the juvenile respondent. In the child protection, the child interviewer who also testified, the state says, well, you know, that person was trained to look for coaching, trained to see if there was manipulation by adults, if somebody was prompting this. That person may have been trained. I posit at some point she did go through a training where this was brought up. However, the interviewer herself testified that the only question she asked along those lines to that child was, did someone tell you what we would be talking about here today? The child answered no. That's not sufficient to get to the heart of the matter of whether an adult has prompted or manipulated that child into making these allegations against this girl. Furthermore, in this case, that child interview was not recorded. The interviewer told us that she attempted to record it, but it didn't work. And the state correctly points out that it's not required to be recorded, and it's not. But in this case, where the evidence is close, we don't have the opportunity to go back and look at that interview and see if that interviewer used leading questions. What types of things did she ask? There's no outline of questions. There's no written tape. We don't know what went on there. We also have this issue of hearsay under 725 ILCS 5-115-10. This allows the interviewer to be able to testify in court as to what the child said. In this case, that piece of evidence was critical because on the stand, the child did not testify to any act of penetration. The only testimony at all in terms of a penetrating touch was from the interviewer. In People v. Zwart, the court has said that sufficient safeguards of reliability of a statement regarding time, content, and circumstances must be assured. In People v. Deavers, which the state has mentioned in its brief, there's no mechanical test for this. This is purely an analysis of the facts. What went on in this case? How does it apply? In this case, the time is not on the state's side. We have a child who is five, maybe six at the time that this occurred. Most likely, from gleaning through the record, it appears at best two months. That does not seem to be credible. Probably about six months between the time of the occurrence and the time of the actual interview. What is six months to a five-year-old child? Six months to a five-year-old child is like years to an adult. There's a great gap in time. The state raises four different cases on this point. I posit that they are all distinguishable from the case at hand. People v. John, the age and the time duration are approximately the same. However, in People v. John, there's a lot more detail given by the alleged child victim in that case. They can give details as to what they were wearing, where they were, who it was. Very, very poor detail. People v. Anderson is distinguishable because the child in that case was 10 years old. The state says it was a year between the incident and the report. But if you look at the case, it was actually involving an adoptive father, and the child reported the incident one month after leaving the home. So that shows that there could have been some issues of safety in that case. MM has been superseded by statute, so I won't go into that. People v. Booker, that's also very distinguishable. The child in that case was 12 or 13 at the time of the assaults. She was 17 when she testified. And what went in on that case was a very horrible case of abuse that occurred regularly every week. We also need to look at content. When we look at the statement that was made, it's not rich in detail, like you would expect the interviewer to be able to get regarding this. The interviewer has some discrepancies. They may be minor, you know, as to where the location was. But it shows a lack of understanding as to what went on. Either the interviewer just forgotten, she didn't write it down properly in her notes, or she misunderstood. If she can misunderstand a detail on the location, then it's certainly possible she can misunderstand other details. That brings us to circumstance. As I already noted, there's no recording of the interviewer's interview with the alleged child victim. Although it's not required under People v. Cookson, that would allow us to go back and look and see what actually did happen in that interview. Surely there are good child interviews, and surely there are horrible child interviews. In this case, we just don't know. There are no safeguards to make sure that there was no prompting in that interview. There are also no safeguards, as I mentioned before. The only question asked on coaching was, did somebody tell you what will be talked about here today? The child answered no. Obviously there are a lot of other things that could have been mentioned to the child, suggested to the child, prompted to the child. Mr. Chairman and police corps, my name is Timothy James Ting, and I represent the people of the state of Illinois. In honor of my time before you today, I will show you why defendants' convictions for aggravated criminal sexual assault should be affirmed by this court. Now, there are three methods in which the defendant attacks the conviction. Number one, whether there was admissible hearsay of the forensic interviewer's testimony in regards to the child's statement, victim's statement, before the trial. Number two, whether or not the defendant was guilty and convicted beyond a reasonable doubt for the sufficiency of the evidence. And number three, whether there was ineffective assistance of counsel given to her by her trial attorney. Now, in the beginning, the defense states that the means of justice means that we need to ensure that everything is made sure. Everything is safeguarded, properly safeguarded, for justice sake. I submit to you, Your Honors, when we have a seven-year-old child who goes on the stand and states that an individual, the defendant, had put her fingers inside of her vagina and kissed her on the lips, which corroborated the testimony that she gave at the forensic interview, such corroborated testimony shows clearly that justice is being served by the defendant's conviction. Now, I will point this court specifically as the defense concedes no one witness is able to sustain a conviction. And I will point this court to People v. Grano as well as a large litany of cases and its progeny which states the same, which is, and I quote, While the outcome of the case rested upon the credibility of a single victim, a conviction may rest upon the testimony of a single witness, if positive and credible, even where contradicted by the accused. Here, Your Honors, we have testimony from Mrs. Woodham, the forensic interviewer that interviewed the child when she first reported her abuse of sexual assault. And you can find on page 53 and 54 as well as 69 and 70 of the record that the forensic interviewer, Mrs. Woodham, stated specifically that the individual, the victim, had no motive to fabricate, not one motive. The forensic interview could think of no reason why this particular girl would accuse the defendant of sexually assaulting her. Now, the defendant states in an oral argument that there was not sufficient enough training, that there was only one question. And again, Your Honors, I will point this court specifically to the record. On page 47, 70-71, and 48 of the record, there was absolutely definitive sources of particular training, particularized training for the forensic interviewer. She had conducted over 1,000 children interviews. She had done various courses on how to specifically ask questions to children who had been victims of abuse or alleged victims of abuse, how not to ask leading questions and as such. And she points specifically to the fact that it was not recorded. But again, the defense concedes it's not required to be recorded. I will point this court again to established case law and People v. Cookson. And Cookson, what happened was that we had a defendant who was charged with sexually assaulting a 7-year-old stepdaughter. The 7-year-old made various statements to the DCFS investigator and the detective and stated various things regarding the sexual assault. There was a video recording system within the room in Cookson, but neither the DCFS investigator nor the detective took any means to actually record the interview. On appeal, the Cookson defendant said there was the means to record, and they did not. That in and of itself shows impropriety, enough so that if they are not going to record it and they have the means and capabilities to do so… … we cannot rely on such a statement to those that would be reliable under the hearsay exception. The Cookson court on appeal disagreed and stated specifically that, and I quote – I think they – or no, I'm sorry. And I quote that even though they – actually, it's not a quote. Sorry, I apologize for that. I just can't find an actual quote. That doesn't matter. You can find my original report to it. But essentially what it said – what I wrote is that the interview was not essential, and the failure to do so did not automatically make the child's victim's statement inadmissible. Rather, we had to look at the facts and circumstances. The trial court looked here and saw that the facts of Cookson are actually even less suspicious than here. Here, Mrs. Woodham actually testified that she wanted to record and tried to record the interview, as you can find on page 58 of the record. However, the recording malfunctioned, and Mrs. Woodham, testifying under oath, said she was not able to review the video of this. Again, you can find this on page 58 and 59 of the record. But nevertheless, Mrs. Woodham again, under oath, testified that she checked to make sure the equipment was functioning and that the record light was on, and the amplifier was turned on, 59 of the record. The trial court, in its ruling, stated specifically, I think even though the tape didn't work, and I quote, Mrs. Woodham was under the impression that it was going to, and that what she was doing would be reviewed later by – a later date by attorneys and judges. Therefore, the trial court found – and you can find that on page 136 of the record – the trial court found this is a case where, sure, the interviewer, having tried to do everything to safeguard this process by trying to record, had ensured that those particular mechanisms were in place. While it didn't record, she tried to do so, and the fact that she knew she was going to be reviewed later on for her work, that ensured that she was going to do a good job, a sufficient job. Certainly, these facts are less egregious than the facts in Cookson by a long shot. Now, the defendant also states that the hearsay exception, which he spends some time there, and states that there are three factors, and this court is well aware of them. It's time, circumstances, and context. When you look at the time, the defendant attempts to distinguish the time here and says that at the most it was six months, and the state would posit that, yes, six months would be the approximate amount of time for the delay. At the most, it would be six months. At the least, it would be two months. Again, I would point this court to John Anderson Booker and M.M. In John, the time was nearly eight months. In Anderson, it was over a year. In Booker, it was three or four years after the sexual assault. It occurred three or four years after the sexual assault, and in M.M. it was approximately six months after the sexual assault. Now, the defendant attempts to distinguish these cases and says that there are specific details that were in those statements in John and Booker and M.M. that are not present in this particular case. Again, the record speaks for itself. We have corroborated testimony of where they were in the record from her testimony and Ms. Woodham's testimony. On page 32 and 35, the victim stated in her testimony that they were in the toy room when the sexual assault occurred. This corroborates the testimony by Ms. Woodham, as you can find on page 52 of the record, that the victim stated it was in the toy room where it occurred. Again, when you look at the specific detail of the layout of the house, it had a computer room by two sources. And the testimony at trial, the victim stated – again, on 35 on the page of the record, she said there was a computer room next to the toy room where the sexual assault occurred. Ms. Woodham's testimony also states the same thing, as you can find on page 54 and 79 of the record. Again, we see even more corroborated details in that the toy room actually had beds on it, and you can find this on page 52 of the record and 79 of the record. These are multiple instances of specific details, a toy room with beds in it, a house that has a computer room in it, and the fact that they were in a particular room, the toy room. All details that lend to the credibility of the victim's statements that this, in fact, occurred. The defendants say that the lack of detail is in the defendant's testimony versus her testimony that she gave to the forensic interview simply is not supported by the record. And for her to say that it is is contradictory. Now, the defendant also states that these cases are all distinguishable as far as John Booker and M.M. as far as the delay. But again, I would point this court to the fact that the defendant posits no case law whatsoever that says that a six-month delay in and of itself means that the statement made by the victim is per se unreliable. The time period of six months, as the forensic interviewer, Ms. Woodham, stated, children generally wait to tell. You'll find this on page 49 of the record. Children generally wait to tell. There is a delay in usually reporting sexual assault. And she goes through a large portion of her interview with the prosecutor during the beginning of the direct examination, which you can find approximately on page 48 to 52 of the record, where she goes through her training techniques and says that these are sensitive concerns. Children at particularly this sensitive age simply don't have the functionality to really comment with urgency as far as what's happening. There is the authority that they are trying to compartmentalize if someone in an authority position can't harm them. And she goes into great detail about it. But without belaboring the point, I would just say to this court, clearly, the record shows consistency and corroboration. That in and of itself is enough to sustain conviction. Absolutely, there are discrepancies. Absolutely, there are inconsistencies to some extent. They are minor, and the defense has stated such. Merely because there are minor discrepancies does not overhaul a conviction. To do so would overrule the justice, would contravene the means of justice that the defense so eloquently put. That would be the ends of justice, not from this conviction. I thank you for your time and for your consideration. I just want to take a moment, Your Honor, to point out what Mr. King said was somewhat inaccurate in terms to what the child's testimony was. He said that she testified that the respondent put her fingers in her vagina. The child probably still doesn't know the word vagina. She never once used the word vagina. When it came to testifying in court, she said that the respondent touched her privacy. The most graphic she got was she thought it was inside her clothes. There's no evidence from the child's own testimony in court of actual penetration. Certainly not to the extent that has been stated by the court, by the state. I think that's just an oversight, not an intentional thing there. In terms of motive, motive to distort this, motive to come up with something that isn't true, I'm not saying the child herself has a motive. I'm thinking that possibly others in the child's household have a motive. We have to definitely read between the lines to grasp that. There was a question in some argument about whether the child knew what a lesbian was, which one can read that maybe someone in the household had concerns that the respondent was a lesbian. The mother says that she was shocked when she found out that the kids cleaned their room. One has to ask, why is the mother shocked when the kids cleaned their room? She was surprised, I'm sure, but shocked. Motive, we don't know, but there are little subtle hints that perhaps someone did have a motive. The state also says that because the child interviewed tried to tape the interview, that ensured a good job. That does not ensure a good job. I wish it did or I would tape myself when I do all of my work. It ensures probably a lack of intentional malpeasance. It does not ensure that somebody won't be overzealous or that they are just plain incompetent. One final point, I do have no case law saying that six months per se makes for a time frame that would render the hearsay testimony unreliable. I do have People v. Deavers, which is stated in the state's brief, that says that this is a case fact specific inquiry. For that reason, I just ask that you overturn this finding of aggravated criminal sexual assault. Thank you.